IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2013

**STATE OF TENNESSEE V. TYRIS LEMONT HARVEY**

**Direct Appeal from the Circuit Court for Blount County**
**Tammy Harrington, Judge**
**Nos. C-19156, C-19757-60, C-20036, and C-20696**

**No. E2012-2500-CCA-R3-CD - Filed August 12, 2013**

The defendant, Tyris Lemont Harvey, appeals the sentencing decision of the Blount County Circuit Court following the revocation of his probationary sentence. The defendant pled guilty in multiple cases, over a period of years, and was serving an effective eleven-year sentence on supervised probation. A violation report was filed, and, following a hearing, the trial court revoked the defendant's probation and ordered that the balance of the original sentences be served in confinement. On appeal, the defendant does not contest the trial court's revocation, but argues that the court erred in ordering him to serve the balance of his sentence in confinement. After review, we conclude no error occurred and affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee, and Mack Garner, District Public Defender (at trial), for the appellant, Tyris Lemont Harvey.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Mike Flynn, District Attorney General; and Clinton Frazier, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History and Factual Background**

The case before us on appeal encompasses seven different cases from the Blount County Circuit Court in which the defendant pled guilty to various charges. On September

17, 2010, the defendant pled guilty to burglary and received a three-year sentence suspended to probation. In November 2010, a violation warrant was issued charging multiple technical violations, as well as that the defendant had been arrested for attempted robbery and failed to report the arrest to his probation officer. Prior to a hearing on the matter, the probation violation report was amended to reflect that the defendant had also been charged with burglary and evading arrest. In March 2011, the trial court addressed the violation charges and ordered the defendant to seek treatment at Centerpoint, a drug treatment facility. One month later, the defendant was released from Centerpoint to Steps half-way house. In July 2011, the defendant failed to return from work as scheduled and was discharged from the Steps program.

On July 25, 2011, the defendant entered guilty pleas to multiple charges. He pled guilty to escape, evading arrest, possession of a schedule II controlled substance, possession of drug paraphernalia, attempted theft, and two counts of burglary. Pursuant to the plea agreement, the defendant was sentenced, as a Range II offender, to: (1) four years for each burglary conviction; (2) two years for the escape; (3) six months for the attempted theft[1]; and (4) eleven months and twenty-nine days for each of the three misdemeanor convictions. The trial court then suspended the sentences to supervised probation.

On August 23, 2011, the trial court ruled on the violation report. The defendant admitted the violations as charged, and the trial court revoked the sentence. The court ordered the defendant to serve 139 days in jail and then be returned to supervised probation for the remainder of the sentence term.

Less than one week later, another probation violation report was filed against the defendant. The charged violations were that the defendant had been arrested on August 21 for domestic violence with an aggravated assault, that he had failed to report the arrest, that he had failed to report, that he was not current on court cost and fee payments, and that he had engaged in assaultive behavior and behaved in a manner that posed a threat to another. In September 2011, the defendant again stipulated to the violations, and the trial court revoked the defendant's probation. He was ordered to serve sixty days in jail before being returned to supervised probation.

In December 2011, a third probation violation report was filed. It charged that the defendant had used cocaine, failed to report to his probation officer on multiple occasions, failed to pay fees and costs as ordered, and failed to report to the jail to serve his previously ordered split confinement. The report was amended on January 3, 2012, to include an allegation that the defendant had violated his probation by being arrested for theft. In May

---

[1] We take this information from the plea agreement form, as the judgment of conviction form for this conviction is not included in the record.

2012, the defendant pled guilty to the theft charge and was sentenced to one year, which was suspended to supervised probation. The defendant also pled guilty to the probation violations, and the court revoked his probation, ordered him to serve nine months in jail, and then be returned to supervised probation.

On July 16, 2012, a fourth violation report was issued alleging that the defendant had failed to report as ordered and failed to pay court costs. On July 30, the report was amended to charge that the defendant had been arrested for domestic violence with an aggravated assault and had failed to report the arrest to his probation officer.

A hearing was held on November 8, 2012, at which the defendant's probation officer, his former girlfriend, and the defendant testified. Joey Walker, the defendant's probation officer, testified that he began supervising the case while the defendant was incarcerated following a prior revocation. The defendant was released from jail on July 10, 2012. Pursuant to the defendant's probation agreement, he was to report to Mr. Walker within seventy-two hours of his release. The defendant did not report. Mr. Walker also testified that the defendant had paid nothing toward his fees and court costs since July 10, 2012. These violations were listed in the initial violation report filed by Mr. Walker. He subsequently filed an amended violation report adding that the defendant had been arrested on July 19 and that he had failed to report that arrest as required.

The next witness to testify was Amanda King, the defendant's former girlfriend. She testified that on the evening of July 10, 2012, she was at her friend Buddy Boy's house. The defendant, who had just been released from jail, arrived. Ms. King testified that all parties were drinking. When Ms. King informed the defendant that she wanted to break off their relationship, the defendant got angry and began threatening her. When she got up to move, the defendant grabbed her hair and spun her around. He proceeded to throw her on the floor, grabbed a boot, and began hitting her. According to Ms. King, the defendant only stopped when Buddy Boy threatened to call the police. She also testified that the defendant continued to lurk outside the home after he left, making her scared to leave. Early the next morning, Ms. King called her mother to take her to the hospital where the police were called.

The final witness called was the defendant. He testified that he was in fact released from jail on July 10 and that he was aware that he was to report to his probation officer within seventy-two hours. The defendant claimed he was released around 12:15 a.m. and expected Ms. King to be there to pick him up. When she failed to arrive, he walked to his sister's home, only to discover that she had moved. Apparently, his sister's former residence was near that of Buddy Boy's, whom the defendant also knew. The defendant testified that he saw lights on at Buddy Boy's house and went there hoping to spend the night before he reported to his probation officer the following morning. According to the defendant, when he arrived Ms. King was high and was drinking, which greatly upset him. The defendant

testified that he also took a drink and eventually tried talking to Ms. King. She informed him that she was dating someone else. He then observed bruises on her arm, and she told him that she was dating someone named Chris. The defendant testified that he left Buddy Boy's and went to Chris' home and proceeded to threaten him, yelling "Chris, I'm going to . . . I'm going to F you up when I catch you." He stated that he then went back to Buddy Boy's home, but he was told to leave. The defendant claimed he spent the night at another friend's home.

The defendant testified that the following morning, he was on his way to see his probation officer when he observed police at Buddy Boy's home. After the police left, the defendant went there and asked what had happened. Buddy Boy told the defendant that Ms. King had accused the defendant of assaulting and raping her. At this point, the defendant went to the home of another friend, where he remained for five days without his depression medication. He claimed that he could not even get out of bed during this time period.

The defendant acknowledged that he was arrested nine days after his release from jail on charges arising from Ms. King's statements. He acknowledged that he did not report to his probation officer as ordered, but he denied that he had harmed Ms. King in any way. He further acknowledged that he had been on probation several times in the past and had served time in prison. Moreover, he acknowledged three prior violations of probation in the instant cases before us. The defendant claimed he did not report to his probation officer because he was afraid due to the allegations against him by Ms. King. He urged the court to impose six months split confinement followed by community corrections for the balance of the sentence. He stated that if released, he would be able to stay with a friend, return to his old job as a roofer, and stay away from drugs.

After hearing the evidence presented, the trial court revoked the defendant's probation and ordered him to serve the balance of his sentence in confinement. The defendant timely appealed.

**Analysis**

On appeal, the defendant contends that the trial court abused its discretion in ordering the balance of the sentence to be served in confinement. A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311 (2010); *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). On appeal, this court will not disturb the trial court's ruling absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show that there is no substantial

evidence in the record to support the trial court's determination regarding the probation violation. *Id.* Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). Rather, if the trial court finds by a preponderance of the evidence that a violation has occurred, the court may revoke the probation and suspension of the sentence. T.C.A. § 40-35-311(e). In a probation revocation hearing, the credibility of witnesses is to be determined by the trial court. *Mitchell*, 810 S.W.2d at 735.

Once the trial court has determined a violation of probation has occurred, it retains the discretionary authority to order the defendant to: (1) serve his or her sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999); *see also*, T.C.A. §§ 40-35-308, -310, -311. The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

In reaching its determination in this case, the trial court made the following extensive findings on the record:

> [The defendant] is before the court on a violation of probation in the cases as previously announced by the Court. The violation that was filed on July the 16th of 2012 stated that he failed to report in person or in writing to probation as directed. The testimony is clear that he was released from the jail on July the [10th] of 2012 and never reported to probation as directed. So, I find that he did violate the terms and conditions of his probation by not reporting.
>
> It also stated that he had failed to pay court costs and his probation officer's testimony was uncontroverted that he had not done that. So, I find that he failed to pay his court costs.
>
> And the initial violation sets out that he is to report within 72 hours. And by [the defendant's] own admission, he failed to do that. So, I find he violated his probation by not reporting again within the 72 hours.
>
> Further, on July the 20th, 2012, there was an order signed that amended the violation of probation warrant dated July 16th, 2012, not only by adding docket numbers to include all the docket numbers that are here today, but also that [the defendant] was arrested on July the 19th of 2012, in Blount County, for domestic violence with aggravated assault and did not inform his officer of the arrest. Specifically, based upon the proof that's been presented today

by both sides, without getting into the details of the domestic violence, it is clear that he did not report that arrest to probation. If you're not reporting to probation at all, it makes it very difficult to report an arrest. And that's just the way that it is.

Going over [the defendant's] testimony specifically, he admitted that he did not report. He admitted to drinking very soon after getting out of jail. He, himself, admitted to threatening behavior that was not testified to. Specifically - - and I could not tell if it was Chris Sudderth or the other Chris, but [the defendant's] testi[fied] specifically about his actions with them. That he didn't report the arrest.

Obviously, something happened between [the defendant] and Ms. King but, truth be told, this being [the defendant's] fourth violation on the initial charge, and him not reporting, and then coming into custody on a new charge is significant in and of itself without even going into the details of the domestic violence charge.

Under the history that [the defendant] has shown with supervision, I must look to your history to determine whether or not you can be successful on probation or whether or not rehabilitative efforts should be attempted in your case . . . . That has been done. You picked up a new felony. This would have - - you've had - - this is your fourth violation. I find that you have violated your probation. There is no - - to use an old Juvenile Court term, there is no less drastic alternative . . . that I have left to me other than for you to serve the balance of your sentence in custody.

Although not challenged by the defendant, we note that the record supports the trial court's decision to revoke probation in this case. We agree that the record amply supports the conclusion that several violations did in fact occur. The defendant himself acknowledges the violations. By acknowledging the violations, the defendant conceded an adequate basis for the court's decision to revoke.

On appeal, the defendant challenges only the decision to order incarceration for the balance of his sentence. He contends that the trial court's decision to incarcerate him was based exclusively on the failure to report to his probation officer, and he complains that ordering confinement for the balance of his sentence was excessive in light of that particular violation. He claims that, under these circumstances, the decision to order a sentence of incarceration is an abuse of discretion.

We disagree. In fact, despite the defendant's argument to the contrary, our reading

-6-

of the trial court's statements do not support the defendant's interpretation that the sentencing decision was based solely on a failure to report. Clearly, the court found that the defendant had violated probation by: (1) failing to report; (2) failing to report his new arrest; (3) failing to pay court costs; and (4) engaging in threatening behavior. Again, all these violations are supported by the evidence presented. Our reading of the trial court's oral finding leads us to conclude that the court based the decision to order incarceration following the revocation upon the fact that this was the defendant's fourth violation of probation in these cases. The court considered his potential for rehabilitation and found it lacking in that the defendant could not even comply with the most basic requirements of a probationary sentence. No abuse of discretion has been shown on this record.

## CONCLUSION

Based upon the foregoing, the decision of the Blount County Circuit Court are affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE